LISA A. MARCY (#5311)
MARCY LAW FIRM, PLLC
2150 South 1300 East, Ste. 500
Salt Lake City, UT 84106
Telephone: (801) 359-2501
Facsimile: (801) 990-4601
lisa@marcylaw.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UTAH HOSPITALITY ASSOC., INC., a nonprofit corporation licensed to do business in the State of Utah, John Doe I, an individual owning a social club; and John Doe II, an individual denied a social club license;<br><br>    Plaintiffs,<br><br>v.<br><br>Gary R. Herbert, Governor of the State of Utah, in his official capacity, Mark Shurtleff, Attorney General for the State of Utah, in his official capacity, Richard J. Sperry, Jeffrey Wright, and Kathleen McConkie Collinwood, in their official capacities as members of the Department of Alcohol and Beverage Control Commission, John Does III-X;<br><br>    Defendants. | **COMPLAINT**<br><br><br>Civil No. _____<br><br><br>Hon. _____ |

## PRELIMINARY STATEMENT

1. This action challenges amendments to Utah's Alcohol and Beverage Control Act, 32B-1-102. ("ABC Act.") SB 314 was enacted by the State of Utah to amend the ABC Act. These amendments include (1) the elimination of discount pricing of alcoholic beverages

offered by social clubs; and (2) the additional requirement of linking the issuance of liquor licenses to social clubs, not only to the population quotas of the State of Utah but also to the number of public safety officers employed by the State of Utah.

2. The laws were signed by Governor Gary Herbert on March 25, 2011. Most of SB 314, including the elimination of discount pricing of alcoholic products, shall go into effect on July 1, 2011. The remainder, including the additions to the "quota system," shall go into effect July 1, 2012.

3. If allowed to go into effect, SB 314 will significantly harm Utahns and visitors to the State of Utah, particularly consumers and the social clubs that operate in the State of Utah.

4. Although the State of Utah retains substantial discretion to establish liquor regulations, such regulations can be subject to the federal commerce power in certain situations.

5. Social clubs must post their prices to the Utah Department of Alcohol and Beverage Control ("DABC") every time they change their prices.

6. Social clubs and their employees may no longer offer temporary "drink specials" (discounts) without being subject to civil and criminal penalties. They may not be reduced below prices the clubs must post with DABC. If they lower the price, it must become a regularly set price for the associated beverage, thereby eliminating previously allowed "drink specials."

7. This system amounts to fixing resale prices of intoxicating liquors and is illegal under § 1 of the Sherman Act, 15 U.S.C.A. § 1 *et seq.*

8. SB 314 fundamentally establishes horizontal price fixing as a restraint on trade in a *per se* violation of § 1 of the Sherman Act, 15 U.S.C.A. § 1 *et seq.*

9. Although the State of Utah claims that the liquor price maintenance law was passed to promote the state's interests under the Twenty-first Amendment, including temperance, compulsory resale price maintenance on intoxicating liquors has no significant effect upon the consumption of alcoholic beverages or upon temperance.

10. Individuals attempting to obtain a necessary liquor license to operate as social clubs cannot obtain licenses, because the state system designed to delegate these licenses has made such licenses scarce. The number of licenses offered is based, in large part, upon the DABC's calculations of the monthly population of the State of Utah.

11. SB 314 adds another obstacle to obtaining a liquor license: beginning on July 1, 2012, the number of licenses offered shall also be based upon the number of public safety officers employed by the State of Utah, meaning that even if sufficient licenses were available, based upon population quotas, the licenses will still be denied if a third party agency (Department of Public Safety) chooses not hire more officers.

12. SB 314 also will allow social clubs, as of July 1, 2012, to offer their existing liquor licenses for sale privately.

13. The combination of extreme scarcity of the licenses coupled with the private sale of licenses results in an unreasonable restraint on trade.

14. Social clubs have been damaged in that the prices they must establish and then to which they must adhere force them to lose significant income. Their consumers must pay more for the products they order.

15. The individuals seeking liquor licenses under the ABC Act must seek those licenses during regularly scheduled, monthly DABC meetings. They are encouraged to make presentations

about their fitness to obtain these vital licenses, only after completing a lengthy application process.

16. The DABC knows at the inception of each meeting that most of these satisfactory and compliant applicants will not receive licenses, based only upon lack of availability of the licenses, and not upon fitness.

17. These individuals are denied their due process and equal protection rights under the federal constitution.

## JURISDICTION AND VENUE

18. Jurisdiction of this Court is founded in section 15 of the Sherman Act, 15 U. S. C. 15, for violation of section 1 of the Sherman Act, 15 U. S. C. 1.

19. Venue as to defendants is proper in the district of Utah, pursuant to section 15(a) and 22 of the Sherman Act, and 28 U. S. C. § 1391(b), (c), because the claims arose in the district of Utah, the issues present a federal question, all the defendants are sued in their official capacity, and their official places of business are all located within this district.

## PARTIES

20. Plaintiff Utah Hospitality Association ("UHA") is a nonprofit corporation licensed to do business in the State of Utah. The UHA was established in 1993 to promote tourism within the state of Utah, effect changes in Utah's liquor laws, and to help curb excessive drinking, including drinking under the influence. Beginning in 2008, the UHA worked closely with the Governor, the Legislature, and other industries to eliminate the requirement for membership in private social clubs. The UHA is a representative body of Utah's social clubs.

4

21. Plaintiff John Doe I is an individual residing in Utah who owns a social club. John Doe I must comply with the states mandates requiring him to maintain the prices of alcoholic drinks for an indefinite time. If he reduces the prices of his alcoholic beverages, he must, at a minimum, keep those prices at that lower set offering. He may not lower his prices set below those he previously published to the DABC. If he fails to comply with this law, he will face civil and criminal penalties.

22. Plaintiff John Doe II is an individual residing in Utah who has performed all of his obligations under the state and municipal laws regarding the opening of a social club in Utah; however, although he has complied with each step, he has discovered that his compliance has been futile. He has applied for a license many months in a row at the regularly scheduled DABC meeting, yet he has been denied each time. Usually, only zero to one license is available for five applicants each month, according to the DABC's Special Edition Newsletter, Spring, 2011.

23. Defendant Gary Herbert is the Governor of Utah. According to Utah law, the Governor is responsible for "supervis[ing] the official conduct of all executive and ministerial officers" and "see[ing] that all offices are still in the duties thereof are performed." Utah Code Ann. §67-1-1. As such, Defendant Herbert is responsible for the execution of SB 314 in the State of Utah. Defendant Herbert is sued in his official capacity.

24. Defendant Mark Shurtleff is the Attorney General of Utah. According to Utah law, the Attorney General's powers and duties include: "defend[ing] all causes to which... any officer, board, or commission of the State in an official capacity is a party." Utah Code Ann. §67-5-1(2). In addition, under Utah law the Attorney General shall: "exercise supervisory powers over the district and county attorneys of the State in all matters pertaining to the

5

duties of their offices." Utah Code Ann. § 67-5-(6). As such, Defendant Shurtleff is responsible for the enforcement of SB 314 in the State of Utah. Defendant Shurtleff is sued in his official capacity.

25. Richard J. Sperry, Jeffrey Wright, and Kathleen McConkie Collinwood are responsible to govern the application of the Alcohol Beverage Control Act in the state of Utah. Their duties include selecting recipients of liquor licenses and granting those licenses after the amount of licenses available is determined by monthly calculations of the State's population.

26. Upon information and belief, John Does III through X are co-conspirators with Defendants in their unlawful restraint of trade. These other co-conspirators have facilitated, adhered to, participated in, and or communicated with others regarding the conspiracy. These other co-conspirators have either acted willingly or, due to concern, unwillingly, in furtherance of the unlawful restraint of trade.

## FACTUAL ALLEGATIONS

27. In March, 2011, the legislature enacted a piece of legislation, SB 314, which amended the Alcohol Beverage Control Act.

28. These amendments made significant changes to the ABC Act, including: addressing the relationship between the number of alcohol related enforcement officers and the issuance of licenses, modifying the calculation of the ratio of revenue to food as compared to revenue from alcohol products, providing for the Governor to appoint the chair of the of the DABC commission, creating the Alcohol Beverage Control Act Enforcement Fund, directing how money in the fund is to be expended, removing existing restrictions on transferring licenses or locations of licenses, addressing the discounting of an alcoholic product, changing the numbers used to determine the number of retail licenses may be issued at any one time,

modifying the hours of sale, and addressing when meetings of the commission may be closed.

29. Most of these amendments shall go into effect at 12:01 AM, July 1, 2011.

30. Defendants conspired to supplant the Federal Government's authority over commerce by enacting amendments to the ABC Act that created illegal restraints on trade.

31. Commencing on an exact date unknown, Defendants conspired, contracted, or combined among themselves or with others, for the purpose of, and with the effect of, maintaining, fixing, or stabilizing the price of alcoholic beverages.

32. Until SB 314, the biggest change to the ABC Act in the last few decades has been the elimination of the private club requirement. That change went into effect on July 1, 2009.

33. The initial concerns of some of the most influential members of the Utah legislature about the elimination of that requirement focused exclusively on their opinion that a large increase in drunk driving and underage drinking would result.

34. It did not. In fact, the only scientific research done on any issues related to temperance, the Eighth Annual DUI Report to the Utah Legislature, states, in part, that "the distribution of DUI arrests by type of violation in FY 2010 was very similar to previous years."

35. The Utah legislature passed SB 314, expressing the same concerns as in 2009, and again, without basis in research. For instance, Sen. John Valentine stated:
    a. "We need some polling or scientific research before we change anything as sensitive as this…We will need much more information other than anecdotal stories."
    b. "I feel like we're achieving a balanced approach. We're saying we're normalizing but we're also seeking enforcement and controlling underaged drinking and that's what we should do as a state."

7

    c. "The way the liquor laws develop is always a mystery to a lot of us. As I looked at room service for example, I couldn't see why you could only buy a bottle of wine without buying a glass of wine."

    d. He claims The Church of Jesus Christ of Latter-day Saints, MADD and parent teacher associations support his plan. "They say this is a reasonable balance between controlling alcohol consumption and having a hospitable state for people to come to."

36. Senate President Michael Waddoups stated: "We don't want to get our tourism industry tied to alcohol. We want it based on things that make Utah great…We are not going to become Las Vegas or New Orleans." "When we see alcohol related accidents on the roads, when we see abuse of family members because someone under the influence of alcohol or drugs, these sorts of things are contrary to community standards that we have in Utah."

37. The DABC has called the current situation: "The Quota Crises." (sic.)

38. During the legislative session, the legislature's own auditor stated that the state of Utah could use some more liquor licenses. The audit purported that Utah's supply of licenses is not meeting the demand for them. The audit urged "[a revision of] the quota for liquor licenses and/or considering the creation of an all-inclusive license for hotels/resorts to help ensure that demand is met for establishments desiring a license for on-premise consumption."

39. Instead of asserting state interests of temperance and underage drinking, the DABC gave the actual reason for the short supply of liquor licenses: "Sadly, the situation is getting worse…Utah's population growth was slower than estimated. As a result, we have issued ten licenses over the quota. The Legislature did not adjust the club quota this year. Accordingly, the DABC will have to hold the license until population growth allows us to reissue it, or

8

until a new law that allows for the sale and transfer of licenses takes effect on July 1, 2012...."

40. The combination and conspiracy alleged herein had and is having the following effects, among others: (a) Plaintiffs lose significant income by either not being able to discount the prices of their alcoholic beverages lower than those published to the DABC; (b) Plaintiffs have been deprived of the benefits of free, open, and unrestricted competition in the market; and, (c) competition in establishing the prices set for alcoholic drinks and obtaining liquor licenses has been unlawfully restrained, suppressed, and eliminated.

41. By reason of the violations of section 1 of the Sherman Act, Plaintiffs have sustained injury to their business or property. The injury sustained by the Plaintiffs is the loss of income from their inability to discount drinks or being forced to keep those prices at an artificially low level, the inability to make a living by opening a social club due to the scarcity of liquor licenses as a result of Defendants' illegal contract, combination, and conspiracy to restrain trade as alleged. This is an antitrust injury of the type that the federal laws were meant to punish and prevent.

## COUNT I.
## VIOLATION OF § 1 OF THE SHERMAN ACT.

42. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

43. Defendants and the unnamed co-conspirators entered into and engaged in the contract, combination, or conspiracy in unreasonable restraint of trade in violation of section 1 of the Sherman Act.

9

44. The contract, combination or conspiracy has resulted in an agreement, understanding, or concerted action between and among Defendants and co-conspirators in furtherance of which defendants have fixed, maintain, and standardized prices for social clubs. Such contract, combination, or conspiracy constitutes a per se violation of the federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade.

45. Defendants' contract, combination, agreement, understanding or concerted action with the co-conspirators occurred in or affected interstate commerce. Defendants' unlawful conduct was through mutual understandings or agreements by, between, and among Defendants and co-conspirators. These other co-conspirators have either acted willingly or, due to coercion, unwillingly, in furtherance of the unlawful restraint of trade alleged herein.

46. SB 314 amounts to a private price-fixing arrangement which is not actively supervised by the State itself and thwarts the national policy in favor of competition.

47. Whereas the purported state interest behind the resale price maintenance system of promoting temperance is supported by all parties, the state can produce no evidence that SB 314 will have any effect on such interest.

48. These hybrid restraints are per se violations of the Sherman Act.

49. The contract, combination, or conspiracy has had the following effects: (a) Plaintiffs lose significant income by not being able to discount the prices of their alcoholic beverages lower than those published to the DABC; (b) Plaintiffs have been deprived of the benefits of free, open, and unrestricted competition in the market; and, (c) competition in establishing the prices set for alcoholic drinks and obtaining liquor licenses has been unlawfully restrained, suppressed, and eliminated.

50. As a proximate result of Defendants' unlawful conduct, Plaintiffs have suffered injury and that they have lost significant income.

## COUNT II.
## INJUNCTIVE RELIEF.

51. Plaintiffs incorporate by reference the allegations contained in the above paragraphs as if fully set forth herein.

52. Factual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties. Plaintiffs contend that they are facing imminent threat of harm if SB 314 is in force, and that this law violates federal law. Defendants are all obligated to enforce this law unless it is found to be illegal.

53. In violating Plaintiffs' rights under the under federal law, Defendants have acted and will be acting under color of law.

54. If allowed to go into effect, SB 314 will cause irreparable injury to Plaintiffs.

55. Plaintiffs have no plain, speedy, and adequate remedy at law against SB 314 other than the relief requested in its complaint.

56. If SB 314 takes effect, Plaintiffs and other individuals and businesses will be subject to continuing economic losses.

57. In doing the things alleged in this complaint, Defendants will deny Plaintiffs' rights secured by federal law.

58. Defendants' enforcement of SB 314 will constitute an official policy of the state of Utah.

59. Plaintiffs are entitled to a declaration that SB 314 violates the Sherman Act and to an order limiting early and permanently enjoining its enforcement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. that the unlawful contract, combination, and conspiracy alleged in count one be adjudged and decreed to be in unreasonable restraint of trade or commerce in violation of section 1 of the Sherman Act;

2. The Plaintiffs recover compensatory damages, as provided by law, determined to have been sustained as to each of them, and that judgment be entered against defendants on behalf of Plaintiffs;

3. That Plaintiffs recover treble damages, as provided by law;

4. That Plaintiffs recover costs of the suit, including attorney's fees, as provided by law; and,

5. For such further relief as the Court may deem just and proper.

Dated this 29th day of June, 2011.

MARCY LAW FIRM, PLLC

Lisa A. Marcy
Attorney for Plaintiffs