JONI J. JONES (7562)
KYLE J. KAISER (13924)
Assistant Utah Attorneys General
Office of the Utah Attorney General
160 East 300 South, Sixth Floor
PO BOX 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Attorneys for Defendants
E-mail: jonijones@utah.gov
E-mail: kkaiser@utah.gov

---

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| **UTAH HOSPITALITY ASSOC., INC.**, a nonprofit corporation licensed to do business in the State of Utah, John Doe I, an individual owning a social club; and John Doe II, an individual denied a social club license,<br><br>                 Plaintiffs,<br><br>v.<br><br>Gary R. Herbert, Governor of the State of Utah, in his official capacity, Mark Shurtleff, Attorney General for the State of Utah, in his official capacity, Richard J. Sperry, Jeffrey Wright, Kathleen McConkie Collinwood, and David Gladwell, in their official capacities as members of the Department of Alcohol and Beverage Control Commission, John Does III-X,<br><br>                 Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br><br>Case No. 2:11-CV-00612<br><br>Judge Bruce S. Jenkins |

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................... vi

**STATEMENT OF FACTS** ..................................................................................... vi

**LEGAL STANDARD** ............................................................................................. 1

**LEGAL ARGUMENT** ............................................................................................ 2

  **I.**    SB 314 Does Not Violate Section I of the Sherman Act............................... 2

     *A.*    *SB314's "Happy Hour" Ban Does Not Violate the Sherman Act.* ............................ 4

        **1.**    **The "Happy Hour" Regulation Is a Unilateral State Regulation and Thus Exempt from the Sherman Act.**................................................................... 4

        **2.**    **The "Happy Hour" Restriction Is Not a *Per Se* Violation of the Act**.................. 6

        **3.**    **The Happy Hour Ban Constitutes State Action and Thus Is Exempt from the Sherman Act.**.......................................................................................... 9

        **4.**    **Even If the Happy Hour Ban Violated the Sherman Act, the Legislation Is Lawful Under the Twenty-first Amendment** ................................................ 9

     *B.*    *SB 314's Provisions Regulating the Number of Liquor Licenses, Tying Liquor Licenses to the Number of Law Enforcement Officials, and Allowing Private Sales of Licenses Do Not Violate the Sherman Act.* ............................................. 11

     *C.*    *Defendants Enjoy Eleventh Amendment Immunity from Plaintiffs' Damages Claims.* ........................................................................................................ 13

  **II.**    SB 314 Does Not Violate Plaintiffs' Procedural Due Process, Substantive Due Process, or Equal Protection Rights Under the Federal or State Constitutions. ....... 14

     *A.*    *SB 314 Does Not Violate the Federal Constitution.* ......................................... 14

     *B.*    *SB 314 Does Not Violate the State Constitution.* ........................................... 18

  **III.**    The LDS Church's Practice of Offering Its View to Legislators on Liquor Laws Does Not Violate the Federal or State Constitutions. .................................. 18

**CONCLUSION** ....................................................................................................... 24

## TABLE OF AUTHORITES

**FEDERAL AND STATE CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 1, 2, 8

*Associated General Contractors of California, Inv. v. Carpenters*, 459 U.S. 519 (2009) ............ 2

*Bailey v. Bayles*, 2002 UT 58, 52 P.3d 1158 (Utah 2002) ................................................ 18

*Bayview-Lofberg's Inc. v. City of Milwaukee*, 905 F.2d 142 (7th Cir. 1990) ............................ 16

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564  (1972) ...................................... 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2009) .................................................. 2

*California Retail Liquor Dealers v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980) .................. 3, 9

*Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691 (1984) .............................................. 10

*Cathy's Tap, Inc. v. Village of Mapleton*, 65 F. Supp. 2d 874 (C.D. Ill. 1999) ................... 18, 19

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) .................................... 17

*City of Columbia, Columbia Outdoor Advertising v. Omni Outdoor Advertising*,
   499 U.S. 365 (1991) .............................................................................. 6

*City of Wichita, Kansas. v. U.S. Gypsum Co*, 72 F.3d 1491 (10th Cir. 1996) .......................... 2

*Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532 (1985) ...................................... 15

*Costco Wholesale Corp. v. Maleng*, 522 F.3d 874 (9th Cir. 2008) ..................................... 8

*Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911) ............................. 7

*Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978) ........................................... 4

*F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412 (1920) ............................................ 17

*Farthing v. City of Shawnee*, 39 F.3d 1131 (10th Cir. 1994) ......................................... 15

*Fisher v. City of Berkley*, 475 U.S. 260 (1986)................................................... 5, 6

*Florida Prepaid Postsecondary Education Expense Bd. v. College Savings Bank*,
   527 U.S. 627 (1999) ............................................................................. 14

*Gallivan v. Walker*, 2002 UT 89, 54 P.3d 1069 (Utah 2002) ........................................... 18

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) ..................................................... 2

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) .................................................... 2

*Hall v. Witteman*, 584 F.3d 859 (10th Cir. 2009) ................................................. 1, 2

*Harries v. McCrea*, 62 Utah 348, 219 P. 533 (Utah 1923)............................................. 21

*Jacobs, Visconti & Jacobs v. City of Lawrence*, 927 F.2d 1111 (10th Cir. 1991)...................... 17

*KT&G Corp. v. Attorney Gen. of Oklahoma*, 535 F. 3d 1114 (10th Cir. 2008) ......................... 5, 7

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) ........................ 7, 8

*Lehman v. City of Louisville*, 967 F.2d 1474 (10th Cir. 1992) ....................................... 17

*Leverington v. City of Colo. Springs*, 643 F.3d 719 (10th Cir. 2011)............................. 1, 2

*Massachusetts Food Ass'n v. Sullivan*, 184 F.R.D. 217 (D. Mass. 1999) ............................... 3

*Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n*,
   197 F.3d 560 (1st Cir. 1999) ................................................................... 12

*McDaniel v. Paty*, 435 U.S. 618 (1978)...................................................... 19, 20, 23

*Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222 (10th Cir. 2010)....................... 14

*North Dakota v. United States*, 495 U.S. 423 (1990) ................................................ 10

*Rice v. Normal Williams Co.*, 458 U.S. 654 (1982).................................................. 6

*Stone v. Salt Lake City Corp.*, 11 Utah 2d 196, 356 P.2d 631 (Utah 1960)........................ 22, 23

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) .............................................................. 2
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, (2007) ................................ 2
*TWFS, Inc. v. Schaefer*, 242 F.3d 198 (4th Cir. 2001) ............................................. 8, 14
*United States v. Frankfort Distilleries, Inc.*, 324 U.S. 293 ............................................ 10
*United States v. Topco Associates, Inc.*, 405 U.S. 596 (1972) ........................................ 7
*Wal-Mart Stores, Inc. v. City of Cheyenne*, No. 96-8080, 120 F.3d 271,
    1997 WL 446806 (10th Cir. Aug. 7, 1997) (unpublished table op.) ..................... 16, 17
*Watson v. City of Kansas City, Kan*sas, 857 F.2d 690 (10th Cir. 1998) ......................... 17
*Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) ............................ 13, 14
*Yakima Valley Memorial Hospital v. Washington State Department of Health*,
    654 F. 3d 919 (9th Cir. 2011) ...................................................................... 5, 12, 13

## STATE AND FEDERAL STATUTES

U.S. CONST. amend. XIV .............................................................................................. 15
U.S. CONST. amend. XXI .............................................................................................. 10
15 U.S.C. § 1 ............................................................................................................ 3, 4
UTAH CONST. art. I § 4 ................................................................................................. 20
SB 167, 58th Leg. g.s., (March 29, 2010), 2010 Utah Laws ch. 276 ............................. 1
SB 314, 59th Leg. g.s., (March 25, 2011), 2011 Utah Laws ch. 334 ................... passim
UTAH CODE § 32B-1-103 ............................................................................................. 10
UTAH CODE § 32B-1-201 ........................................................................................ 1, 16
UTAH CODE § 32B-5-203 ............................................................................................. 16
UTAH CODE § 32B-5-305 .......................................................................................... 1, 8

## FEDERAL RULES

Fed. R. Civ. P. 10(c) ................................................................................................... 2
Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1
Fed. R. Civ. P. 8 ......................................................................................................... 6

## STATE ADMINISTRATIVE RULES

UTAH ADMIN.CODE R81-5-11 ............................................................................. 7, 11,15

## ADDITIONAL AUTHORITY

HERBERT HOVENKAMP, HOVENKAMP HORNBOOK ON FEDERAL ANTITRUST POLICY, THE LAW OF
    COMPETITION AND ITS PRACTICE (4th ed. 2011) ...................................................... 5
Lester J. Mazor, *Notes on a Bill of Rights in a State Constitution*, 1966 UTAH L. REV. 326, 332
    (1966) .................................................................................................................... 21
National Highway Traffic Safety Administration, *Research Report, Preventing Over-
    Consumption of Alcohol—Sales to the Intoxicated and Happy Hour (Drink Special) Laws*,
    DOT HS 809 878 (Rev. Feb. 2005) ....................................................................... 11
Pamela Jones Harbour, *The Supreme Court's Antitrust Future: New Directions or Revisiting Old
    Cases*, ANTITRUST SOURCE (Dec. 2007) ................................................................... 8

Scott C. Idelman, *Religious Premises, Legislative Judgments, and the Establishment Clause*,
    12 Cornell J.L. & Pub. Pol'y 1, 82 (2002) ................................................................. 20, 23
Tammy E. Linn, *Competing with Antitrust Laws*, 75 Brook. L. Rev. 975, 991 (2010) ............... 3

## INTRODUCTION

Defendants Gary R. Herbert, Governor of the State of Utah; Mark L. Shurleff, Attorney General for the State of Utah, and Dr. Richard J. Sperry, Jeffrey Wright, Kathleen McConkie Collinwood, and David Gladwell, Commissioners of the Utah Department of Alcoholic Beverage Control, by and through counsel Joni J. Jones and Kyle J. Kaiser, Assistant Utah Attorneys General, respectfully submit their Memorandum in Support of their Motion to Dismiss.

## STATEMENT OF FACTS

Taking all of the non-conclusory factual allegations made in the Complaint as true, the following facts form the basis of the Defendants' Motion:

1.      Plaintiffs Old Post Office LLC, Moffat, and Whittle are owners of social clubs licensed to sell liquor in Utah.  (Pls.' Am. Compl. (doc. 3) ¶¶ 41, 42.)  Plaintiffs Chevalier and Odgen Entertainment LLC are owners of businesses that are licensed to sell beer pursuant to a "tavern license." Plaintiffs Chevalier and Odgen Entertainment LLC wish to be granted a license to sell liquor as a social club, but have not secured a license, at least in part because, under Utah's liquor license quota system, no licenses are available for them.  (Id. ¶¶ 43, 44.)  Plaintiff Utah Hosptiality Association ("UHA") is a trade group, claiming to be "a representative body of Utah's social clubs."  (Id. ¶ 40.)

2.      Defendant Gary R. Herbert is the Governor of the State of Utah.  Defendant Mark L. Shurtleff is the Attorney General for the State of Utah.  Dr. Richard J. Sperry, Jeffrey Wright, Kathleen McConkie Collinwood, and David Gladwell are Commissioners of the Utah Department of Alcoholic Beverage Control ("DABC"). Governor Herbert and Attorney General

Shurtleff are charged with enforcing the laws of the State of Utah.  The Commissioners of the

DABC are charged with, among other things, issuing liquor licenses pursuant to Utah law.  All

Defendants are named in their official capacity only.  (*Id.* ¶¶ 46–48.)

3. Plaintiffs challenge the enforcement of a number of provisions of Senate Bill

314,[1] enacted by the Legislature and signed by the Governor in 2011, and its predecessor, Senate

Bill 167, enacted in 2010[2]. (*E.g.*, *id.* ¶ 1.)

4. As further described below, Section 26 of SB314 restricts licensees' ability to sell

alcoholic products at discounts during certain times of the day, below cost, or at reduced prices

"that encourages over consumption or intoxication."   SB 314, 59th Leg. g.s. (March 25, 2011)

2011 Utah Laws ch. 334, § 26 (1)(b), (2)(a)–(e) (codified at Utah Code § 32B-5-305(1)(b),

(2)(a)–(e)).  Rule 81-5-11, enacted pursuant to DABC rulemaking authority, requires that club

licensees prepare a menu or board listing all prices of alcoholic beverages available for

inspection by patrons.  Utah Admin. Code R81-5-11.  No regulation specifies the length of time

in which the prices must remain valid.  Likewise, no regulation specifies that a retail social club

must provide, or post, its prices to the DABC.

---

[1]    SB 314 includes 109 sections, amends nearly eighty sections of the ABC act, and enacts twenty-eight new sections of the Utah Code.  The brief analyzes only the legal questions raised by Plaintiffs in the Amended Complaint, and only in regards to the sections of SB314 described in the Complaint.  A full copy of the slip law is attached hereto as Exhibit A.
     SB 314, 59th Leg. g.s., (March 25, 2011), 2011 Utah Laws ch. 334, *available at* http://le.utah.gov/~2011/bills/sbillenr/sb0314.htm (last visited January 11, 2012).

[2] In actuality, the happy hour restrictions challenged by Plaintiffs were enacted in Senate Bill 167 in the 2010 legislature.  SB 167, 58th Leg., g.s., (March 29, 2010), 2010 Utah Laws ch. 276, § 160, codified at Utah Code § 32B-5-305).  Both statutes' effective dates were July 1, 2011. *See id* § 384.  Because Plaintiffs complains of enactments in Senate Bill 314, and because the happy hour language is included in both SB 314 and SB 167 for consistency's sake, Defendants will also refer to the statute as Senate Bill 314.

5.      Additionally, SB 314 places restrictions on the number of licenses that the Commission may issue and ties the issuance of licenses to a ratio to the number of "alcohol-related law enforcement officers" as designated by the Utah Department of Public Safety.  SB 314, 59th Leg. g.s., (March 25, 2011), 2011 Utah Laws ch. 334, § 2 (codified at UTAH CODE § 32B-1-201).

6.      As a result of Utah's liquor control laws, there is a greater demand for licenses than licenses available. (*E.g.*, Am. Compl. ¶¶ 43–44, 64–65.)

7.      Plaintiffs claim that unnamed "representatives" of the Church of Jesus Christ of Latter-Day Saints "support[ed]" SB 314, and told unnamed legislators that if SB 314 did not pass "there would be repercussions."  (Am. Compl. ¶¶ 60(d), 61, 63.)

## LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff.  *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).  But a claim survives only if "there is plausibility in the complaint."  *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).  Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me

accusation[s]" are insufficient.  *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949; *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).  Particularly in the antitrust context, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558 (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528, n.17 (1983)).

In reviewing a motion to dismiss, the Court may rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed.  *See* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Hall v. Bellmon,* 935 F.2d 1106, 1112 (10th Cir. 1991).  Statutes and published administrative rules and regulations are appropriate for judicial notice.  *See, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (recognizing that a court may take judicial notice of "facts which are a matter of public record" in the context of a motion to dismiss); *City of Wichita, Kan. v. U.S. Gypsum Co*, 72 F.3d 1491, 1496 (10th Cir. 1996) (allowing OSHA regulations to be judicially noticed as "a social fact with evidential consequences").

## LEGAL ARGUMENT

I. **SB 314 Does Not Violate Section I of the Sherman Act.**

Plaintiffs' first claim for relief seeks damages and injunctive and declaratory relief for alleged violations of the Sherman Antitrust Act.  In particular, Plaintiffs allege that the requirement in SB 314 that social clubs maintain a printed price list of alcoholic beverages

amounts to private price-fixing (Am. Compl. ¶¶ 1–11), and they claim the requirement that the number of liquor licenses must be tied both to population and to the number of law enforcement officers—coupled with the provision that allows private license holders to sell their liquor licenses—is an unreasonable restraint of trade.  (Am. Compl. ¶¶ 14-17.)

Section 1 of the Sherman Act prohibits "[e]very contract … or conspiracy in restraint of trade or commerce among the several States, or with foreign nations …."  15 U.S.C. § 1.  A state statute that authorizes private parties to engage in anticompetitive conduct may be unenforceable as contrary to the Sherman Act.  *See generally Cal. Retail Liquor Dealers v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980).  The Supreme Court applies a three-part test to determine if a state statute regulating the sale or distribution of liquor, such as SB 314, must be struck down:  First, does the regulation violate the Sherman Act?  If so, does the State Action Doctrine render the state immune?  Third, if the regulation violates the Act and the State Action doctrine does not apply, is the regulation still a permissible exercise of the State's power under the Twenty-first Amendment?  *See Midcal*, 445 U.S. at 102–06; *Mass. Food Ass'n v. Sullivan*, 184 F.R.D. 217, 225 (D. Mass. 1999) (refusing to analyze the state action doctrine following a determination that a state statute does not violate the federal antitrust laws); *see also* Tammy E. Linn, *Competing with Antitrust Laws*, 75 BROOK. L. REV. 975, 991 (2010) (collecting cases and laying out the three-step analysis).

Plaintiffs' allegations fail to state a plausible claim for relief under any part of the test.  For the reasons discussed below, neither of the two sections of SB 314 that Plaintiffs challenge violates the Sherman Act.

**A.      *SB314's "Happy Hour" Ban Does Not Violate the Sherman Act.***

Plaintiffs challenge the amendments to SB 314 that prohibit retail licensees from *temporarily* lowering prices—which effectively prevents social clubs from holding a "Happy Hour" period when alcoholic drinks are discounted for a portion of the day.  (*See* Am. Compl. ¶¶ 1, 6.)  Section 26 of SB 314 provides that a retail licensee (which includes full-service restaurants, limited-service restaurants, clubs, and other types of licensees) may not: sell an alcoholic product at a "discount price" on any date or at any time; sell below cost; sell a product at a "special or reduced price that encourages over consumption or intoxication"; sell a product at a reduced price for only certain hours of the day, such as a "happy hour"; or, sell 2-for-the-price-of-one, or unlimited drinks.  SB 314, 59th Leg. g.s. (March 25, 2011), 2011 Utah Laws ch. 334, § 26 (1)(b), (2)(a)–(e) (codified at UTAH CODE § 32B-5-305(1)(b), (2)(a)–(e)).  Rule 81-5-11 requires that club licensees prepare a menu or board listing all prices of alcoholic beverages available for inspection by patrons; but no regulation specifies the length of time in which the prices must remain valid.  UTAH ADMIN. CODE R81-5-11.  These provisions of the statute and implementing regulations do not violate the Sherman Act because there is no conspiracy to restrain trade.

**1.   The "Happy Hour" Regulation Is a Unilateral State Regulation and Thus Exempt from the Sherman Act.**

The Sherman Act prohibits contracts or conspiracies in restraint of trade.  15 U.S.C. § 1.  But a unilateral government regulation is wholly exempt from scrutiny under the Sherman Act, even when the state action has anticompetitive effects.  *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 133 (1978).  A unilateral restraint is one in which "no further action is necessary by the private parties because the anticompetitive nature of the restraint is complete upon enactment."

*Yakima Valley Mem. Hosp. v. Wash. State Dep't of Health*, 654 F. 3d 919, 927 (9th Cir. 2011). In other words, a conspiracy does not exist simply because a government entity issues restraints that citizens must follow.  *Fisher v. City of Berkley*, 475 U.S. 260, 267 (1986). Such restraints constitute a unilateral action by the state and thus do not constitute an antitrust violation.  *Id.*

In contrast, a "hybrid" restraint is one in which "nonmarket mechanisms merely enforce private marketing decisions," *id.* at 267–68, or "enforce companies' decisions to collude in prices, to dictate prices by which other companies must abide, or to otherwise violate the Sherman Act." *KT&G Corp. v. Att'y Gen. of Okla.*, 535 F. 3d 1114, 1130 (10th Cir. 2008).  Put another way, a restraint is hybrid where the statute "effectively g[ives] one set of private persons the power to control the pricing decisions of another set of private persons." HERBERT HOVENKAMP, HOVENKAMP HORNBOOK ON FEDERAL ANTITRUST POLICY, THE LAW OF COMPETITION AND ITS PRACTICE § 20.1 (4th ed. 2011) .

SB 314 is a unilateral, not a hybrid, restraint.  Here, the legislation at issue simply imposes certain requirements that social clubs must follow:  they cannot temporarily discount liquor prices (no happy hour), cannot sell drinks at discounted prices (two-for-the-price-of-one), and they must provide a printed price list.  While SB 314 allows each bar or restaurant to set its own prices on alcoholic beverages (so long as the prices are not sold below cost), SB 314 does not allow any bar or restaurant the power to control the pricing decision of any of its competitors. Bars and restaurants *can* compete in the marketplace, and no private party mandates the clubs' prices.  SB 314 merely provides a direct, governmental regulation on conduct designed to encourage overconsumption by temporarily reducing prices.

Furthermore, as a unilateral regulation, the statute cannot implicate the Sherman Act because there is no conspiracy. Plaintiffs name the government actors and unnamed "additional co-conspirators." (Am. Compl. ¶ 49.) The government cannot conspire with a regulated person, *Fisher*, 475 U.S. at 267; *City of Columbia, Columbia Outdoor Advertising v. Omni Outdoor Advertising*, 499 U.S. 365, 374 (1991). And there is no de facto agreement among bars and restaurants as to price. The lack of a co-conspirator further demonstrates the unilateral nature of the restriction.

Moreover, the Federal Rules of Civil Procedure require a plaintiff to allege "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.; *see also* Fed. R. Civ. P. 8. "[A] conclusory allegation of agreement at some unidentified point does not supply adequate facts to show illegality." *Id.* at 557. Plaintiffs have pleaded nothing more than a conclusory allegation of some agreement at some time with unnamed coconspirators. In the absence of any well pleaded conspiracy, Plaintiffs allegations fail to show a "conspiracy" in restraint of trade, and therefore, they have not pleaded a violation of the Sherman Act.

### 2. The "Happy Hour" Restriction Is Not a *Per Se* Violation of the Act.

Even if Plaintiffs could allege a conspiracy, the "Happy Hour" restriction does not violate the Sherman Act because it is not a *per se* violation. Courts have held that a state statute is unenforceable as conflicting with the Sherman Act only if the statute is a *per se* violation of the Sherman Act. *Rice v. Normal Williams Co.*, 458 U.S. 654, 661 (1982). An act is a "per se" violation "only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws *in all cases*, or if it places irresistible pressure on a private party to violate the

antitrust laws in order to comply with the statute….” *Id.* (emphasis added); *accord KT&G Corp.,* 535 F.3d at 1128. *Per se* prohibitions apply to statutes that “would always or almost always tend to restrict competition and decrease output … have manifestly uncompetitive effects, and lack any redeeming virtue.” *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,* 551 U.S. 877, 886 (2007). Per se violations include horizontal agreements[3] among competitors to fix prices or to divide markets. *Id.* (citations omitted). For other restraints, the Rule of Reason requires a factfinder to weigh all the circumstances to determine whether the practice should be prohibited. *Id.* The Rule of Reason applies to agreements and business relationships whose “economic impact … is not immediately obvious.” *Id.* at 887 (citations and quotations omitted).

If the Court believes the legislation creates such a conspiracy or agreement, it would nonetheless not be a *per se* violation of the Sherman Act. Each individual retail licensee retains the freedom to set prices however it chooses. It retains the freedom to respond to its competitors’ prices (subject to direct regulation). It is far from obvious that such an agreement would reduce competition. And the restriction has redeeming value, protecting against binge drinking, overconsumption in a short period of time, and drunk driving.[4]

---

[3]     A “horizontal” agreement involves competitors at the same level entering into a price fixing, exclusive territory swapping, or similar agreements. *E.g.*, *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 607–08 (1972). These stand in contrast to “vertical price maintenance” agreements, in which a manufacturer dictates price or terms of future sales by retails or others. Such agreements are now governed by the Rule of Reason. *See generally Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911) (establishing that vertical price maintenance agreements were *per se* violations of the Sherman Act), *overruled by Leegin Creative Leather Prods., Inc.*, 551 U.S. at 887   (establishing Rule of Reason analysis for vertical price maintenance agreements).

[4]     *Midcal* held that the vertical price scheme put in place by the California legislature was a *per se* restraint, but subsequent Supreme Court cases have withdrawn from that proposition, and such arrangements are not judged by the rule of reason. *Compare Midcal*, 445 U.S. at 100 (“This court has ruled consistently that resale price maintenance illegally restrains trade.”), *with*

Nor is the legislation tantamount to a "post and hold" requirement.  In a "Post-and-Hold" regime, a liquor retailer must post its prices to a government agency, and then it must hold that price for a specific period of time.  Courts have recognized that such a scheme may be a *per se* antitrust violation.  *See, e.g.*, *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 893–94 (9th Cir. 2008); *TWFS, Inc. v. Schaefer*, 242 F.3d 198, 206–07 (4th Cir. 2001).

The provisions at issue in this case are not the equivalent of the post-and-hold requirements in *Costco* and *TWFS*.  First, despite Plaintiffs' incorrect legal conclusions in their complaint, no statute or regulation requires retail establishments to post their prices to anyone except their customers.  *Cf.* UTAH CODE § 32B-5-305 (1)(b), (2)(a)–(e); UTAH ADMIN. CODE R81-5-11.  The Court should not accept Plaintiffs' conclusory legal assertions, directly contradictory to the statute, as true.  *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 at 1949; *Twombly*, 550 U.S. at 564.

But even if the Court were to accept Plaintiffs' incorrect legal conclusion that they must post prices with the DABC, the regulatory scheme is still not a "post and *hold*."  Nothing in the statute or regulations requires any retail licensee to "hold" to their prices for any length of time (only as long as takes to print a new menu).  Retail licensees are permitted to change their prices whenever they wish; they just cannot change them *temporarily* or for the purpose of increasing consumption in a short period.  *Cf.* UTAH CODE § 32B-5-305 (1)(b), (2)(a)–(e); UTAH ADMIN.

---

*Leegin Creative Leather Products, Inc.*, 551 U.S. at 899 ("[W]e think that were the Court considering the issue as an original matter, the rule of reason, not a per se rule of unlawfulness, would be the appropriate standard to judge vertical price restraints."), *and* Pamela Jones Harbour, *The Supreme Court's Antitrust Future: New Directions or Revisiting Old Cases*, ANTITRUST SOURCE, at 5 (Dec. 2007) ("[I] the post-*Leegin* era, it will be a rare case indeed in which a plaintiff will be able to answer the *Midcal* Court's threshold question in the affirmative. And if one cannot make it past the threshold question of *Midcal*, the classic two-pronged analysis for state action becomes irrelevant.").

CODE R81-5-1.  Thus the "post and hold" cases do not apply to the provisions of SB 314 that bar happy hour pricing.

### 3. The Happy Hour Ban Constitutes State Action and Thus Is Exempt from the Sherman Act.

Even if the Court were to understand Section 26 as creating an unlawful restraint on trade in violation of the Sherman Act, the provision is lawful under the State Action Doctrine.  Under that doctrine, a state is immune and the law is not preempted by the Sherman Act if there is a "clearly articulated and affirmatively expressed [] state policy" that limits competition, and if the restraint is "actively supervised by the State itself." *Midcal*, 445 U.S. at 105 (citations and quotations omitted).

The first requirement for State Action is easily satisfied.  Section 26 clearly and affirmatively recognizes the limitation on retail licensees' ability to sell alcohol below cost, at special rates, or at times to encourage quick consumption in a short period. UTAH CODE § 32B-5-305(1)(b), (2)(a)–(e).

Regarding the second element, the restriction on happy hour *is* actively supervised.  The DABC is authorized to conduct investigations, fine, suspend, and take other disciplinary action for licensees who have violated the law or DABC rules.  Thus the State Action Doctrine bars Plaintiffs from suing the DABC officials.

### 4. Even If the Happy Hour Ban Violated the Sherman Act, the Legislation Is Lawful Under the Twenty-first Amendment.

Even if Plaintiffs state a plausible claim that section 26 of SB 314 could violate the Sherman Act, and even if the State Action Doctrine does not apply, the statute still survives as a

valid exercise of Utah's authority under the Twenty-first Amendment to the United States Constitution.

Section 1 of the Twenty-first Amendment repeals prohibition, but section 2 provides substantive authority over state regulation of alcohol: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. CONST. amend. XXI, § 2.

Courts examine whether the statute restraining the sale or distribution of alcohol serves and substantiates a legitimate state policy and "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 714 (1984). Temperance, of course, is a legitimate interest at the core of the Twenty-first Amendment. *North Dakota v. United States*, 495 U.S. 423, 433 (1990). Although not explicitly recognized, binge drinking, and fast consumption of alcohol, which may arise during the limited period of time alcohol is discounted, would certainly be a "temptation[] of cheap liquor" which a state may regulate through the Twenty-first Amendment "and the Commerce Clause does not gainsay it." *United States v. Frankfort Distilleries, Inc.*, 324 U.S. 293, 301 (Frankfurter, J., concurring). One of the express purposes of Utah's ABC laws is to "promote the reduction of the harmful effects of (i) over consumption of alcoholic products by adults ...." UTAH CODE § 32B-1-103(4).

> Happy hour prohibitions encourage temperance and moderation in alcohol consumption. Happy hours, drinking contests, 'all you can drink' specials, and the like encourage over-consumption by reducing prices, a potent inducement to drinking large amounts of alcohol in short time periods. The research offers strong evidence for the negative health outcomes of happy hour and other drink

specials practices, thereby suggesting that policies restricting these practices could have a positive impact on public health.

National Highway Traffic Safety Administration, *Research Report, Preventing Over-Consumption of Alcohol—Sales to the Intoxicated and "Happy Hour" (Drink Special) Laws*, DOT HS 809 878, at 3 (Rev. Feb. 2005), *available at* http://www.nhtsa.gov/people/injury/alcohol/pireweb/images/2240pierfinal.pdf (last visited Jan. 11, 2012) (attached hereto as Exhibit B.)

There can be no doubt that the concern for moderation is adequately expressed in section 26's happy hour, 2-for-1, free drink, and unlimited drink prohibitions.  Discouraging over consumption of alcohol is core to the Twenty-first Amendment.  Further, to the extent there are any anticompetitive effects caused by prohibiting retail licensees from temporarily discounting their prices, they are more than outweighed by the state's interest in protecting against tragic loss of life from binge drinking or auto fatalities tied to drunk driving.  Accordingly, even if section 26 could be construed to violate the Sherman Act, the statute and rules promulgated thereunder survive as a reasonable exercise of Utah's rights under the Twenty-first Amendment.

### B.     SB 314's Provisions Regulating the Number of Liquor Licenses, Tying Liquor Licenses to the Number of Law Enforcement Officials, and Allowing Private Sales of Licenses Do Not Violate the Sherman Act.

Plaintiffs' Amended Complaint points to three aspects of the licensing portion of the statute that they allege violate antitrust laws.  First, they assert that scarcity of licenses is an unreasonable restriction on trade.  Second, they assert that the new requirement of a ratio of police officers to citizens' gives the department of safety unchecked ability to regulate the number of licenses based on how many officers it chooses to hire. Finally, they assert that the ability for a private party already possessing a license to sell that license places unreasonable

restraints on trade. All three of these allegations are without merit because the statutory mandates amount to unilateral action.

A unilateral decision to limit the number of liquor licenses available to private parties is not an antitrust violation. *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 563 (1st Cir. 1999). In *Massachusetts Food Ass'n*, a state statute limited to three the number of licenses an individual retailer could be issued. In affirming a motion to dismiss, the court noted that the usual antitrust tests found in cases like *Midcal* and *Fisher* were not necessary in this instance because such a restriction "has not ordered or authorized private parties to engage in conduct that, absent immunity, would even arguably violate antitrust laws …." *Id.* at 564. In coming to this conclusion the court points out that the statute does not give private parties the ability to negotiate the number of licenses available. *Id.* Instead, it simply gives a directive that must be adhered to by private parties that want to sell liquor in the state. *Id.*

Similarly, in *Yakima Valley Memorial Hospital,* the Ninth Circuit rejected an antitrust challenge to Washington's licensing scheme tying additional licenses for certain medical procedures to proof that the market capacity of the geographical area requires additional providers. *Yakima Valley*, 654 F.3d at 925. The Ninth Circuit rejected the hospital's antitrust argument that the scheme allowed already-licensed hospitals to squeeze out competition by expanding capacity, where new entrants to the market could not have access to a new license. According to the court, the "regulations create *market* power, but that is different from a hybrid regulation that delegates *regulatory* power." *Id.* at 929. Because the license itself is the barrier to entry, and the license is complete upon imposition by the state, the restraint of trade is the

"logical and intended consequence of the … regulation[]," a unilateral restraint, and not subject to restriction by the Sherman Act.  *Id.*

The Utah statute is similarly unilateral, and delegates market power (who may enter the market for establishments selling liquor) rather than regulatory power (any discretion on how to provide the liquor) and thus does not violate the Sherman Act.  Even if the Department of Public Safety chooses to limit the number of liquor licenses by refusing to hire more officers, this will not be an antitrust violation because the Department is a state entity and the decision to hire individuals is not at the discretion of any private party.

Furthermore, the ability to sell a license does not affect the number of available licenses. It simply alters who possesses the license. At no point is any private party free to opt into or out of any of these regulatory provisions, a fact which places the state's licensing policies outside the reach of antitrust liability.

The provisions of SB 314 that limit licenses to population, tie the number of licenses available to the number of law enforcement officers, and allow for private sale of licenses, do not violate the Sherman Act.  Utah has simply unilaterally set limits on liquor licenses, and such action has consistently been found not to implicate the Sherman Act.

### C.  *Defendants Enjoy Eleventh Amendment Immunity from Plaintiffs' Damages Claims.*

Plaintiffs allege that they are entitled to treble damages pursuant to the Sherman Act. (Am. Compl. at 20–21, Request for Relief ¶¶ 6–7.)  However, Plaintiffs have named only public officials in their official capacity.  Public officials sued in their official capacities are also arms of the state, and immune from suit in federal court.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1234 (10th

Cir. 2010) ("When a state official is sued in his or her official capacity, the Eleventh Amendment bars retrospective relief, usually in the form of money damages, because any such judgment is deemed directed at the state as the real party in interest rather than the nominal officer."). Congress can abrogate Eleventh Amendment immunity by enacting legislation pursuant to section 5 of the Fourteenth Amendment, but the Sherman Act was enacted pursuant to Congress's Commerce Clause power, which cannot abrogate immunity. *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 636 (1999); *cf. TFWS*, 242 F.3d at 204–05 (recognizing that a Sherman Act claim could go forward, but only because the plaintiffs did not seek monetary damages from the state officials in their official capacities). Accordingly, the Defendants are immune from money damages under Plaintiffs' Count I that portions of SB 314 violate the Sherman Act.

## II.   SB 314 Does Not Violate Plaintiffs' Procedural Due Process, Substantive Due Process, or Equal Protection Rights Under the Federal or State Constitutions.

Plaintiffs assert that the provisions of SB 314 discussed above violate their "procedural and substantive due process and equal protection rights afforded to them by the federal and state constitutions." (Am. Compl. ¶ 69.)   Plaintiffs have not alleged any facts to show how SB 314 purportedly violates these rights, and these claims therefore fail as a matter of law.

### A.   *SB 314 Does Not Violate the Federal Constitution.*

First, Plaintiffs have sued Defendants in their official capacity, and for the reasons set out in section I.C, above they are entitled to Eleventh Amendment immunity from any claims for money damages based on alleged violation of the federal constitution.  *Will*, 491 U.S. at 65–66; *Muscogee (Creek) Nation*, 611 F.3d at 1234.   Second, there is no legal basis for these claims.

Plaintiffs' procedural due process claim fails because there is no allegation in the complaint that they have been deprived of a legally protected property interest without due process of law.  The Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV.  Its procedural protections are "a safeguard of the security of interests that a person has already acquired in specific benefits."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972).  Determining whether an individual's due process right has been violated requires the Court to answer two questions:  "(1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process[?]"  *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).

Plaintiffs allege they have not been able to obtain the desired "full liquor" licenses, and hold only a tavern (sale of beer only) license.  (Am. Compl. ¶¶ 43, 44.)  A due process claim cannot be based on a property interest which a party hopes to obtain.  Property interests to which Fourteenth Amendment procedural rights attach are not created by the Constitution, but rather by "existing rules or understandings that stem from an independent source such as state law."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (citations and internal quotation marks omitted).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it…. He must, instead, have a legitimate claim of entitlement to it."  *Roth*, 408 U.S. at 577.

Courts have recognized that laws establishing a process for obtaining a liquor license do not create a property interest.  *See Bayview-Lofberg's Inc. v. City of Milwaukee*, 905 F.2d 142,

145-46 (7th Cir. 1990) ("[T]he ordinance does not establish substantive criteria which, if met, automatically entitle an applicant to a liquor license.  Without substantive criteria, no property interest is created within the meaning of the due process clause."); *Wal-Mart Stores, Inc. v. City of Cheyenne*, No. 96-8080, 120 F.3d 271, 1997 WL 446896, at *1 (10th Cir. Aug. 7, 1997) (unpublished table op.) (holding that liquor statutes and ordinances governing applications did not create property interest because "these provisions do not state that fulfillment of specified conditions assures approval of an application").

Here, Plaintiffs allege they cannot obtain the desired full liquor license because, due to the quota system (basing number of licenses on the state's population), no licenses are currently available.  (Am. Compl. ¶ 27.)  Even if Utah laws did guarantee applicants a license if they meet all criteria[5], Plaintiffs would still not have a property interest in the liquor licenses because Utah law provides that an applicant cannot obtain a liquor license unless population increase allows additional licenses to be issued.  UTAH CODE § 32B-1-201; (*see also* Am. Compl. ¶ 14).  Under Utah law "fulfillment of specified conditions" includes the condition that population increases sufficiently to allow a new license to be issued.  UTAH CODE § 32B-1-201.  Plaintiffs concede that this condition has not been met.  (Am. Compl. ¶ 28.)  Thus Plaintiffs have not alleged that state law creates a property interest in full liquor licenses for those who otherwise qualify.

Nor can Plaintiffs assert a substantive due process claim.  "Authority in [the tenth] circuit is unclear on what interest is required to trigger substantive due process guarantees."  *Jacobs,*

---

[5]     In fact, Utah law grants broad discretion to the ABC Commission in deciding whether to grant a license.  *See* UTAH CODE §  32B-5-203 (providing that DABC shall conduct an investigation into and hold public hearings on applicant's fitness and make recommendation to the ABC commission, which must consider enumerated criteria, including "any other factor the commission considers necessary").

*Visconti & Jacobs v. City of Lawrence*, 927 F.2d 1111, 1119 (10th Cir. 1991).  But, "asserted interest in a liquor license 'bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution.'"  *Wal-Mart Stores*, 1997 WL 446896, at * 2 n.4 (quoting *Lehman v. City of Louisville*, 967 F.2d 1474, 1476 n.2 (10th Cir. 1992)) (additional internal quotations omitted).  Plaintiffs' allegations that they have not been able to obtain a full liquor license do not state a cognizable claim of a fundamental right that is protected by substantive due process.

Plaintiffs' equal protection claim is likewise unavailing.  The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike."  *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).  A violation occurs if the state treats a person differently from one who is similarly situated, without justification for the different treatment.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A plaintiff who claims violation of his equal protection rights must allege specific facts that show a discriminatory purpose was a motivating factor in the decision the plaintiff challenges.  *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1998).

Plaintiffs allege that they were denied a "full" liquor license because no licenses are available, due to the quota system.  (Am. Compl. ¶¶ 28-30, 40-44.)  They have not alleged the decision to deny the license was based on discrimination; indeed, they have alleged the decision was based on an objective criterion:  the lack of available licenses due to the quota system.  Plaintiffs therefore cannot state an equal protection claim.

**B.**      ***SB 314 Does Not Violate the State Constitution.***

Plaintiffs' state constitutional due process and equal protection claims fail for substantially the same reasons that their Federal Constitutional claims fail. *Bailey v. Bayles*, 2002 UT 58, ¶ 11 n.2, 52 P.3d 1158, 1162 (Utah 2002) ("Utah's constitutional guarantee of due process is substantially the same as the due process guarantees contained in the Fifth and Fourteenth amendments to the United States Constitution. Therefore, our analysis of questions concerning procedural due process under [both state and federal] constitutions are also substantially the same."); (internal quotation marks omitted). *Gallivan v. Walker*, 2002 UT 89, ¶ 31, 54 P.3d 1069, 1083 (Utah 2002) (noting that Utah's "uniform operation of laws" provision and the federal Equal Protection Clause "embody the same general principle: persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same"). These claims should likewise be dismissed.

**III.   The LDS Church's Practice of Offering Its View to Legislators on Liquor Laws Does Not Violate the Federal or State Constitutions.**

Plaintiffs claim that it is a violation of the Federal and State constitutions for the Church of Jesus Christ, Latter Day Saints to provide its views on, and for the Legislature to consider the LDS Church's views, on state laws and policies governing alcohol sale and consumption. (Am. Coml. ¶¶ 93, 94; Am. Compl., Prayer for Relief, ¶ 4.) But both the federal courts and the Utah Supreme court have made it plain that religious leaders and organizations have a First Amendment right to comment upon proposed legislation.

In *Cathy's Tap, Inc. v. Village of Mapleton*, strip club owners challenged an ordinance that prohibited the selling of alcohol where there was also live nude dancing. 65 F. Supp. 2d 874 (C.D. Ill. 1999). The business owners claimed that the ordinance violated the federal

18

Establishment Clause, because the town had "succumb[ed] to the importuning of religious groups whose religious creed opposes either or both [alcohol or live nude dancing]." *Id.* at 892. The court rejected the challenge, noting:

> The Court has not found any case in which the successful lobbying efforts of religious organizations or individuals invalidates a legislative enactment under the Establishment Clause. … *It would be a severe infringement on the free speech rights of those persons or groups with religious views to forbid them from lobbying their local government*, or, if allowed to lobby, to require them to leave their religious beliefs and convictions at the steps of city hall.

*Id.* (emphasis added).  The court found a secular purpose from the face of the law, combating the "harmful secondary effects associated with adult-use establishments" and "the combustible mixture of alcohol and nudity," and rejected the First Amendment challenge.  *Id.*

The U.S. Supreme Court has likewise recognized that states cannot seek to exclude religious leaders from being involved in lawmaking.  In *McDaniel v. Paty*, the Court addressed Tennessee's prohibition on ministers serving as a state legislator.  435 U.S. 618 (1978).  It unanimously held that such a prohibition violated the minister's constitutional rights, even though Tennessee asserted that the prohibition was justified on protecting the state from undue influence of the clergy's religion under the Establishment Clause.  *Id.* at 629.  Justice Brennan, concurring in the judgment, explained the heart of the problem:

> [G]overnment may not as a goal promote "safe thinking" with respect to religion and fence out from political participation those, such as ministers, whom it regards as overinvolved in religion.  Religionists no less than members of any other group enjoy the full measure of protection afforded speech, association, and political activity generally.  The Establishment Clause, properly understood, is a shield against any attempt by government to inhibit religion as it has done here.  It may not be used as a sword to justify repression of religion or its adherence from any aspect of public life.

*Id.* at 632, 641 (Brennan, J. concurring in the judgment) (emphasis added).[6]  Given this well settled law, Plaintiffs' allegations that the LDS Church's input on Utah's liquor laws violates the Federal Constitution must fail.

Likewise, Plaintiffs' claim directed at the LDS Church fails under the Utah Constitution. Plaintiffs cite Article I, § 4 of the Utah Constitution, and cite particularly to the "Domination Clause":  "There shall be no union of Church and State, nor shall any church dominate the State or interfere with its functions."  UTAH CONST. art. I § 4.

There is little history or Utah case law regarding the Clause.  The entire section received little discussion during the 1895 constitutional convention, "probably because both Mormon and non-Mormon delegates agreed that a strong emphasis on church-state separation was necessary to change perceptions of Utah by citizens of other states and to foster a favorable vote for the constitution by Utah's non-Mormon voters."  JEAN BICKMORE WHITE, THE UTAH STATE CONSTITUTION: A REFERENCE GUIDE 27 (1998).  Professor White described the section as "the cornerstone of the commitment by the constitution's framers to guarantee religious freedom and separation of church and state in Utah, and to overcome the perception in the rest of the nation that Utah was a de facto Mormon theocracy."  *Id.*  Another commentator recognized the Domination Clause as "unusual," not only because it is unique to Utah's constitution, but also unusual because the plain text of the clause is a prohibition "directed at individuals or private groups rather than at the government itself."  Lester J. Mazor, *Notes on a Bill of Rights in a State*

---

[6]      *See also* Scott C. Idelman, *Religious Premises, Legislative Judgments, and the Establishment Clause*, 12 CORNELL J.L. & PUB. POL'Y 1, 82 (2002) ("[T]he contention that [legislative reliance on religious premises] should in fact be invalidated [under the Establishment Clause] cannot be squared with two basic principles of democratic legitimacy—that citizens should be able to participate equally in the political and legal spheres and that citizens should be able to expect that laws will generally reflect majoritarian values.").

*Constitution*, 1966 UTAH L. REV. 326, 332 (1966).  In other words, the clause's plain text does not proscribe government action at all.  It prohibits "any church" from "dominat[ing]" the State or "interfer[ing]" with the State's functioning.

Professor Mazor notes, "[e]nforcement of a provision limiting private conduct is likely to require a greater exercise of judicial creativity," and suggests that the provision, like other state constitutional provisions prohibiting private discrimination, be viewed as permission for the legislature to pass a statute enforcing the constitutional mandate, rather than as a self-executing, enforceable constitutional right.  *Id.* at 332, 343 & nn.37, 114.  Because the clause is aimed at private actors, Plaintiffs cannot state a cause of action against Defendants, who are being sued based on their status as state officials, for relief.

Even if the clause were aimed at state action, the clause cannot serve to invalidate a validly passed law merely because the law was advocated by two unnamed "representatives from the Church of Jesus Christ of Latter-Day Saints." (Am. Compl. ¶ 63.)  To do so would entangle the Courts in impossible political quagmires and violate LDS Church members' rights to free exercise of their religion and to free speech.

The few cases interpreting Utah's Domination clause do not support Plaintiffs' claim.  In *Ewing v. Harries*, the Utah Supreme Court refused to invalidate a Salt Lake County Sheriff election, even though the plaintiffs alleged that the LDS president and the Ministerial Association of Salt Lake City instructed the members of the LDS church to cast their ballots for one of the candidates.  68 Utah 452, 250 P. 1049 (Utah 1926); *see also Harries v. McCrea*, 62 Utah 348, 219 P. 533 (Utah 1923) (recounting the facts and allegations in both cases).  While much of the Court's review centered on the propriety of the suit as an election contest, the Court

did address the plaintiffs' contention that, through speeches and writing, the LDS church leaders

violated the Domination Clause and thus made the election invalid.  The Court noted:

> Keeping in mind the political rights of the electors of this state, how can a court
> prevent any number of them, whether they are churchmen or laymen, whether
> they are members of any particular church or denomination or whether they have
> no church affiliations whatever, from combining and uniting their efforts to bring
> about the election of a particular candidate or any number of candidates?…
>     [A clergyman] possesses all the rights and privileges of a citizen and
> elector, and has a right to reason with his fellows precisely as anyone else.  How
> can a court, then, draw the line where the right of the citizen ends and the
> influence of a churchman begins?

*Ewing,* 250 P. at 1053.  The Court then noted the immense problems of proving that it was

religious influence, not some other purpose, that led the voters to elect the sheriff:

> [H]ow can a court determine whether the voter was influenced by what a church
> leader said as such or by what he said as a citizen?...  Is the court going to compel
> the electors to come before it and require them to state for whom they voted and
> what caused them to do so until such a number have appeared and testified as will
> change the result of the election.…"

*Id.*  Thus, the Utah Supreme Court has recognized both the logistical difficulty of separating out

one's political choice with a religious command and the rights of the religious to be active in the

political sphere.

In *Stone v. Salt Lake City Corp.,* the Court was asked to declare invalid a conveyance of a

parcel of land from Salt Lake City to the LDS church.  11 Utah 2d 196, 356 P.2d 631 (Utah

1960).  The plaintiff alleged that because the land was supposed to later be conveyed to the

federal government for the purpose of a federal building, that the LDS church was attempting to

influence the government, and the conveyance thus violated the Domination Clause.  The Court

rejected the argument, noting that "just as any other property owner … [the Church] can use any

legitimate means to persuade a prospective buyer to purchase from it....  To expect a court to

infer from the sole fact that the parties involved are the Church and the federal government that there must be some improper influence exerted upon the latter would involve farfetched and unrealistic conjecture." *Id.* at 202, 356 P.2d at 634–35.

The Utah Supreme Court recognizes that, while Utah's freedom from religion clauses may be unique and expansive, the Domination Clause cannot be read to disadvantage the religious over the nonreligious, nor can they invalidate a legal government act or election merely because it is consonant with a particular religious belief or advocated by religious leaders.

Whatever protections it may provide, the Domination Clause cannot be interpreted as Plaintiffs assert in their complaint. To prohibit individuals, and even representatives of any church from petitioning their government, and to invalidate laws passed following any such consultation would create the host of problems identified by the Utah and United States Supreme Courts. It would require a court to unnecessarily assert itself into valid political decisionmaking. *See Ewing*, 250 P. at 1053. It would require an unprecedented and unpredictable level of proof for a court to inquire into a legislator's motivation. *Id.* It would require a new separation of church and state—one that separates secular evaluation of the public good from religious morals of a safe and just society. *See Idelman*, *supra* note 6, at 82. And, most fundamentally, it would force Utahans to choose between their religion and their constitutionally protected rights to speak with public officials about issues of public concern. *See McDaniel*, 435 U.S. at 626 (noting that a state cannot "punish[] a religious profession with the privation of a civil right" (quoting 5 WRITINGS OF JAMES MADISON 288 (G. Hunt ed. 1904))). Plaintiffs' interpretation and requested relief has been rejected by every court to hear such an argument, and for good reason.

Plaintiffs' interpretation would violate the federal constitution, and, regardless of the scope of the Domination Clause, Plaintiffs' claims fail to state a plausible claim and must be dismissed.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully ask this Court to dismiss Plaintiffs' Amended Complaint, with prejudice.

DATED this 12th day of January, 2012.

OFFICE OF THE UTAH ATTORNEY GENERAL


 /s/ Kyle J. Kaiser
KYLE J. KAISER
JONI J. JONES
Assistant Utah Attorneys General
Attorneys for Defendants